DAVID C. JUAREZ,

        **Plaintiff,**

v.                                    Case No. 21-CV-1092

SGT. JEREMY MAY, *et al.*,

        **Defendants.**

## DECISION AND ORDER

Plaintiff David C. Juarez, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Juarez was allowed to proceed on a claim against defendants Sgt. Jeremy May, Officer Craig Knecht, Officer Gloria Galvin, Officer Trevor Smith, Officer Pablo Martini, Officer Maxine Delalorve, Officer Andrew Abbot, and Officer Jordan Shulski for allegedly using excessive force against him while he was a pretrial detainee at the Kenosha County Pretrial Facility. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF Nos. 82.)[1] The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 7, 50.)

---

[1] As explained below, Juarez also filed a "motion for summary judgment" (ECF No. 104) that is really a response to the defendants' summary judgment motion. As such, the court does not consider it a cross-motion.

## PRELIMINARY MATTERS

The defendants argue that the court should deem their proposed findings of fact as undisputed because Juarez failed to properly respond pursuant to Federal Rule Civil Procedure 56 and Civil Local Rule 56, and that the court should find Juarez's motion for summary judgment as untimely. (ECF No. 108 at 1-2.) Considering the second argument first, Juarez's "motion for summary judgment" is clearly intended as a response to the defendants' motion for summary judgment that is simply mislabeled. This "motion" was filed at the same time as Juarez's declaration and response to the defendants' proposed findings of fact. As such, the court will not consider it a separate motion for summary judgment. The response to the defendants' motion was timely filed. To the extent that the response is a separate motion, the court denies it as moot for the reasons stated below.

As for Juarez's failure to follow the requisite rules of procedure, district courts are entitled to construe *pro se* submissions leniently and in the light most favorable to the *pro se* party. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Here the court has the benefit of Juarez's response to the defendants' proposed findings of fact, his declaration, and videos showing the incident. The court has sufficient information to decide the defendants' summary judgment motion on the merits without accepting their proposed findings of fact as undisputed. The court notes that Juarez's amended complaint is unsworn and will not treat it as an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011).

2

# FACTS

On June 4, 2019, Juarez was booked into the Kenosha County Pretrial Facility. (ECF No. 95, ¶ 1.) The arresting officers (unidentified and not defendants) brought him to "Zone 1" for the intake process. (*Id.*, ¶ 18.) Approximately an hour later, the booking process was completed, including Juarez's completion of the "Medical/Mental Health Questionnaire" (Questionnaire). (*Id.*, ¶ 19.) Early in the morning on June 5, 2019, defendant May reviewed Juarez's Questionnaire responses and asked staff if a Mental Health Risk Assessment (Assessment) had been performed. (*Id.*, ¶ 20.) Staff told May that it had yet to be completed. (*Id.*, ¶ 21.) May directed defendant Martini to conduct an Assessment on Juarez because Juarez had spent time in a mental health facility in May 2019. (*Id.*, ¶ 22.) May also instructed Martini to take another officer with him because it was noted on the Questionnaire that Juarez had a history of making threats to law enforcement officers. (*Id.*)

To properly conduct the Assessment Martini and defendant Abbot needed to move Juarez to a conference room. (ECF No. 95, ¶ 22.) They had to wake Juarez up in his cell to move him, which upset Juarez because he was woken "from a rem-sleep state." (ECF No. 105 at 1.) Once Juarez was moved to the conference room, Martini completed the Assessment and, after consulting with non-defendant Corporal Burdick, it was determined that Juarez needed to be placed in "restrictive housing with a Level 1 suicide watch initiated." (ECF No. 95, ¶¶ 24-25.)

Martini and Abbot then cuffed Juarez's hands to the front of his body and began escorting him to restricted housing. (ECF No. 95, ¶ 26.) Defendant Smith accompanied

3

Martini and Abbot on the escort. (*Id.*, ¶ 27.) Juarez "started to raise his voice saying how he should not be placed on a Level 1 watch." (*Id.*, ¶ 28; ECF No. 107, ¶ 28.)

Several surveillance videos without audio captured what happened next. One video shows that, as Juarez and his escort turned "down the Zone 5 hallway," Juarez purposely kicked a mop and bucket. (ECF No. 98 at Ex. 4D, 0:01-0:15; ECF No. 95, ¶ 29.) A separate video shows Juarez struggling against the officers, who move to subdue him against the wall. (ECF No. 98 at Ex. 4B, 0:12-0:33.) The officer on the top left is assertively instructing Juarez, though the contents of the conversation are unknown. (*Id.*)

A third video shows the officers take Juarez down to the floor, although they do not slam him into the floor. (ECF No. 98, Ex. 4D at 0:33-0:48.) Juarez and the officers actually appear to all fall. (*Id.*) At this point, May appears in the video, and it is undisputed that May told Juarez that, if he did not stop resisting, he would tase him. (*Id.* at 2:00-24; ECF No. 95, ¶ 54; ECF No. 107, ¶ 54.) May did not have to use his taser. (ECF No. 95, ¶ 54.)

At this point the officers decided to use a restraint chair to move Juarez to the restricted housing unit. (ECF No. 95, ¶ 55.) Juarez was placed into the restraint chair with no issue and the record does not indicate that any additional restraint or force was necessary. (ECF No. 107, ¶¶ 64-68.)

Once Juarez was restrained, medical staff were sent to examine him and to approve the fit of the restraints on the chair. (ECF No. 95, ¶ 69.) The defendants assert that medical staff did not observe any injuries to Juarez. (*Id.*, ¶ 73.) Juarez asserts that,

4

as the video shows, officers had their knees on his neck "to where he had a momentary hyperventilating/suffocatingly panic attack therefor blacking out for an undetermined amount of time while four officers smothered him to the ground chest down with the inability to expand his chest cavity to inhale oxygen." (ECF No. 107, ¶ 74.)

The video does not show whether the officers had their knees on Juarez's neck or whether Juarez ever passed out. However, it is undisputed that Juarez did not request medical attention for passing out or for any other injury after the takedown. (*Id.*, ¶ 72.) Juarez asserts that, while he was in the Level 1 cell, "he made claims of pain and discomfort as well as then to only have one medical strap check out of 7.5 hours." (*Id.*) He also asserts that he suffered "a small cut on his left wrist from the handcuffs." (*Id.*, ¶ 73.)

The defendants assert that Juarez was unruly and shouting obscenities right before he purposely kicked the mop and bucket. (ECF No. 95, ¶ 30.) Juarez denies this, saying he accidentally kicked the bucket and was not yelling obscenities. (ECF No. 107, ¶¶ 29-30.) He also states generally that he never resisted, was never noncompliant, and never presented a danger to the defendant officers. (*Id.*, ¶¶ 32-35.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See*

5

*Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Juarez claims the defendants violated his constitutional rights when they used excessive force on him while escorting him to the restricted housing unit. Because Juarez was a pretrial detainee, his claim of excessive force is governed by the Due Process Clause of the Fourteenth Amendment. The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *See*

*Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)).

Under this standard, whether a defendant used excessive force is an objective, not a subjective, determination, and "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* Whether the force was objectively unreasonable turns on the "facts and circumstances of each particular case." *Id.* at 397. "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In assessing the officer's use of force, "a court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotations marks and citations omitted). Other considerations to determine whether the force is reasonable include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting." *Id.*

As to restraining Juarez against the wall, the videos show that Juarez purposely kicked the mop and bucket. The videos also show that several officers immediately

7

slammed Juarez against the wall. The fact that so many officers responded to the incident suggests that Juarez was a security threat.

The videos are less clear when it comes to forcing Juarez to the floor. They show that the officers did not slam Juarez to the ground as he contends. They also show everyone rather abruptly fall to the ground. The videos do not show whether officers put their knees on Juarez's neck or whether Juarez lost consciousness.

Juarez asserts the officers put their knees on him, that he could not breathe, that he had a panic attack, and that he blacked out. The defendants note he did not seek medical assistance when he had the opportunity. Indeed, even when taking the facts in the light most favorable to Juarez, at most he sustained a small cut from the handcuffs, and he reported no other injuries at the time. However, "[t]he absence of significant injury will not defeat a claim of excessive force." *Williams v. Stauche*, 709 Fed. App'x 830, 834-35 (7th Cir. 2017).

The defendants additionally note that two of the officers—Knecht and Shulski— were not involved in either restraining Juarez against the wall or securing him on the floor. (ECF No. 95, ¶¶ 81-84.) Knecht delivered the restraint chair, and Shulski placed the handcuffs on Juarez once he calmed down. (*Id.*) Juarez does not dispute these facts. As such, the court will grant summary judgment in favor of Knecht and Shulski and dismiss them from the case. Even though there is video evidence, when taking the facts in the light most favorable to Juarez, a genuine dispute of material fact exists as to whether the remaining defendants used excessive force when restraining Juarez against the wall and securing him on the floor.

8

Case 2:21-cv-01092-WED    Filed 02/20/25    Page 8 of 10    Document 113

The remaining defendants argue that, even if the court finds there are questions of material fact, the court should nevertheless grant summary judgment in their favor because they are entitled to qualified immunity. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 F. App'x 773, 775 (7th Cir. 2018). It is well-established that officers cannot use force that is severe enough that it amounts to punishment and doing so amounts to a constitutional violation. *See Kingsley* 576 U.S. at 396-97 (citing *Graham,* 490 U.S. at 395 n. 10) ("Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Williams* 709 Fed. App'x at 834-35; *Broadfield*, 737 F. App'x at 776 (holding that it is well-established that if the use of force was objectively unreasonable, it violates the Constitution, and qualified immunity does not apply). In the event the finder of fact concludes that the remaining defendants used excessive force in restraining Juarez, they would not be entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. Because the court grants summary judgment in favor of Knecht and Shulski, they are dismissed. The court will set a telephonic status conference at a later date to discuss next steps.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 82) is **GRANTED in part and DENIED in part.**

9

Summary judgment is **GRANTED** in favor of defendants Craig Knecht and Jordan Shulski. They are **DISMISSED**. The defendants' motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Juarez's motion for summary judgment (ECF No. 104), to the extent that it is a motion, is **DENIED as moot**.

Dated at Milwaukee, Wisconsin this 20th day of February, 2025.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge